

# In the United States Court of Federal Claims

No. 15-41C
(Filed: February 20, 2015)

NOT FOR PUBLICATION

FILED
FEB 20 2015
U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| ROBERT AJAMIAN, ) | ) |
| Plaintiff, ) | ) Pro Se Complaint; Sua Sponte |
| ) | ) Dismissal for Want of |
| v. ) | ) Jurisdiction; RCFC 12(h)(3); |
| ) | ) Transfer; 28 U.S.C. § 1631 |
| THE UNITED STATES, ) | ) |
| Defendant. ) | ) |

Robert Ajamian, Latham, N.Y., pro se.

Mark E. Porada, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.[1]

ORDER

CAMPBELL-SMITH, Chief Judge

Before the court is the complaint of pro se plaintiff Robert Ajamian (plaintiff or Mr. Ajamian) filed on January 14, 2015.[2] See Compl., ECF No. 1, at 1.[3] The relevant facts giving rise to the claims in plaintiff's complaint appear to involve an allegation that

---

[1] Although defendant filed a Notice of Appearance, ECF No. 4, the court did not request briefing from defendant and is acting sua sponte.

[2] Plaintiff also filed an Application to Proceed In Forma Pauperis. ECF No. 3. For the limited purpose of addressing the court's jurisdiction, that motion is **GRANTED**. The Clerk of Court is directed to file the complaint with no filing fee.

[3] Because the complaint does not include a caption, the official caption of the case was supplied by the Office of the Clerk of Court in conformance with Rule 10(a) of the Rules of the United States Court of Federal Claims (RCFC), which provides that "[t]he title of the complaint must name all the parties . . . with the United States designated as the party defendant."

the death of his father was a result of medical malpractice and that the attorneys handling his father's estate "destroyed [his] families [sic] property and damaged [their] lives." Id. Plaintiff's past attempts to recover for these alleged wrongs have proven unsuccessful in both state and federal court. See id. at 8. Plaintiff now seeks a writ of prohibition and $42 million dollars in damages. Id. For the following reasons, the court **DISMISSES** plaintiff's complaint.

I.     Background

Attached to plaintiff's complaint is a decision by Judge Mae D'Agostino of the United States District Court for the Northern District of New York (district court) that dismisses a 42 U.S.C. § 1983 action brought by Mr. Ajamian against the State of New York and the New York State Supreme Court, Appellate Division, Third Department (New York State Supreme Court). See generally Mem.-Decision & Order, Ajamian v. New York, No. 13-cv-1316, 2014 WL 3928448 (N.D.N.Y Aug. 11, 2014). The district court detailed the procedural history giving rise to the suit before it:

> On January 10, 2012, Plaintiff filed a claim in the New York State Court of Claims against the State of New York. The Court of Claims dismissed the claim because it merely "set[] forth vague and confusing allegations of 'delay of justice' and 'conflict of interest' of certain judges and lawyers with respect to certain proceedings in the Albany County Surrogate's Court and in the Appellate Division, Third Department." Plaintiff appealed this decision, and the Third Department dismissed his appeal. Plaintiff then filed a motion to reargue, and the Third Department denied the motion.

Id. at *1 (alterations in original) (internal citations omitted). Among the arguments advanced by Mr. Ajamian was his contention that the New York State Supreme Court "incorrectly distributed a portion of his father's estate" and violated "State laws, Federal laws, and international human rights laws regarding [his father's estate]." Id. Mr. Ajamian added that "his father's death was the result of medical malpractice," and that he "incurred excessive legal fees due to the corruption" of many of the same adverse parties referred to in the instant action. Id. (internal quotation marks omitted); cf. Compl. 2 (listing adverse parties).

The district court dismissed Mr. Ajamian's action based on several grounds, to include (1) that the State of New York and the New York State Supreme Court are immune from suit under the Eleventh Amendment; (2) that the Rooker-Feldman doctrine barred it from modifying or reversing a state court judgment; and (3) that plaintiff's "frivolous claims" failed to state a cause of action under 42 U.S.C. § 1983. Ajamian, No. 13-cv-1316, 2014 WL 3928448 at *6–7; cf. U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced, or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); 42 U.S.C. § 1983 (providing, in

2

relevant part: "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured"); Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998) ("The Rooker–Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment."). Plaintiff appealed this decision, which was dismissed by the United States Court of Appeals for the Second Circuit "because it lack[ed] an arguable basis in law or fact." Order, Ajamian v. New York, No. 14-2934 (2d Cir. Oct. 22, 2014), ECF No. 26; cf. Order, Ajamian, No. 14-2934 (2d Cir. Nov. 25, 2014), ECF No. 38 (denying plaintiff's motion for reconsideration).

In the instant action, plaintiff requests that the court issue a writ of prohibition "in aid of this court's appellate jurisdiction" to remedy the New York state and federal courts' violation of his constitutional rights. Compl. 8. Plaintiff also details his request for $42 million:

> [M]y father's damages of 3 million from medical malpractice and discrimination from . . . St. Mary's [Hospital] of Troy, NY, 5 million in damages, and our estate properties damages, 3 million[,] destroying our potential income of 3 of his children plus our losses taking care of our disabled brother . . . costing us 3 million in losses from 1978–2015. This adds up to 14 million plus treble which is 42 million.

Id. at 4.

II.     Legal Standards

The Tucker Act establishes and limits the jurisdiction of the Court of Federal Claims. See 28 U.S.C. § 1491 (2012). The Tucker Act affords this court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Id. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity necessary for a plaintiff to sue the United States for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights upon a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). A plaintiff must identify an independent source of substantive law that creates a right to money damages in order for the case to proceed. Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)); see also Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.

2004) ("Subject matter jurisdiction is an inquiry that this court must raise sua sponte, even where, as here, neither party has raised this issue."). "In deciding whether there is subject-matter jurisdiction, the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." Folden, 379 F.3d at 1354 (internal quotation marks omitted).

Although complaints filed by pro se plaintiffs are generally held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see Vaizburd v. United States, 384 F.3d 1278, 1285 n.8 (Fed. Cir. 2004) (noting that pleadings drafted by pro se parties "should . . . not be held to the same standard as [pleadings drafted by] parties represented by counsel"), pro se plaintiffs nevertheless must meet jurisdictional requirements, Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004) (per curiam); see also Kelley v. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for pro se litigants only."). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim, RCFC 12(h)(3), unless the interest of justice is served by transferring the case, 28 U.S.C. § 1631 (2012).

III. Discussion

For the following reasons, the court lacks subject matter jurisdiction over plaintiff's claims. Because the transfer of plaintiff's case to another federal court is inappropriate, the court dismisses plaintiff's complaint.

    A. The Court Does Not Possess Jurisdiction over Plaintiff's Claims

        1. Plaintiff's Request for a Writ of Prohibition

Black's Law Dictionary defines a writ of prohibition as "[a]n extraordinary writ issued by an appellate court to prevent a lower court from exceeding its jurisdiction or to prevent a nonjudicial officer or entity from exercising a power." Black's Law Dictionary 1405 (10th ed. 2014); see Stephenson v. United States, 58 Fed. Cl. 186, 191 (2003) (observing that an earlier edition of Black's Law Dictionary defined a writ of prohibition as "'[a] writ issued by a superior court, directed to the judge and parties of a suit in an inferior court, commanding them to cease from the prosecution of the same, upon a suggestion that the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court'" (quoting Black's Law Dictionary 1090–91 (5th ed. 1979))).

Plaintiff mistakenly believes that the Court of Federal Claims possesses appellate jurisdiction over the New York State Supreme Court, the United States District Court for Northern District of New York, and the United States Court of Appeals for the Second Circuit, and, in fact, appears to confuse this court with the United States Supreme Court.

See Compl. 8 ("The above courts could not deliver justice so I have come here at the United States Supreme Court to enforce my constitutional rights, bill of rights, inalienable rights, and international human rights."). However, the Court of Federal Claims does not possess appellate jurisdiction over any other court. See Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts . . . ."); Hicks v. United States, No. 10-793, 2011 WL 3319563, at *3 (Fed. Cl. Aug. 1, 2011) ("[T]he court has no jurisdiction to review the decisions of other courts . . . ."); Hernandez v. United States, 96 Fed. Cl. 195, 203 (2010) ("This court does not possess jurisdiction to review decisions of other courts or the proceedings in other federal courts."), appeal dismissed, 475 F. App'x 912 (Fed. Cir. 2011). Thus, the court lacks the authority to issue a writ of prohibition against the courts identified by plaintiff—or any other court, for that matter.

    2.    Plaintiff's Remaining Claims

Plaintiff's complaint can be read as raising independent claims against various third parties, including certain named judges and lawyers, a bank, and a hospital See Compl. 1, 4 (claiming that Judge D'Agostino "had a conflict of interest" and that her dismissal of his case without a trial violated his due process rights); id. at 4 (claiming that various judges, lawyers, and Troy Savings Bank "were all involved in the damages that resulted [in] obstruction of justice"); id. at 1, 4 (referencing discrimination claims against a hospital); cf. id. at 2–3 (citing to 22 A.L.R. 5th 261 (regarding "hate crime" statutes) and 152 A.L.R. Fed. 1 (regarding "reverse discrimination" in contravention of the Fourteenth Amendment's Equal Protection clause)). However, this court may only hear claims properly brought against the United States. 28 U.S.C. § 1491(a)(1); see United States v. Sherwood, 312 U.S. 584, 588 (1941) (stating that the jurisdiction of the Court of Federal claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States[,] the suit as to them must be ignored as beyond the jurisdiction of the court" (internal citation omitted)). Accordingly, this court does not have jurisdiction to hear any claims that are not against the United States.

Plaintiff's complaint can also be read as lodging a new and independent 42 U.S.C. § 1983 action. See Compl. 1 ("I filed this as a 42 U.S. Code § 1983 civil action for deprivation of right prohibits the [New York State Supreme Court] from blocking justice due to [a] conflict of interest."). "Section 1983 jurisdiction, however, is conferred exclusively on the United States District Courts." Lowe v. United States, 76 Fed. Cl. 262, 266 (2007) (citing 28 U.S.C. § 1343(a)); see Simmons v. United States, 71 Fed. Cl. 188, 193 (2006) ("Jurisdiction for Section 1983 claims is conferred by 28 U.S.C. § 1343(a)(4) (2000), which grants district courts jurisdiction to hear Section 1983 claims."). Accordingly, this court does not possess jurisdiction to hear claims arising under 42 U.S.C. § 1983.

Plaintiff further alleges that, pursuant to Rule 5015 of the New York Civil Practice Law and Rules, he should be relieved from the New York State Supreme Court judgment "due to fraud, misrepresentation, and misconduct of adverse parties" and because "the court[] lack[ed] . . . jurisdiction" to render the judgment. Compl. 3; cf. N.Y. C.P.L.R. § 5015(a)(3)–(4) (McKinney 2014) (providing that "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of: . . . 3. fraud, misrepresentation , or other misconduct of an adverse party; or 4. lack of jurisdiction to render the judgment or order"). As an initial matter, Rule 5015 gives only the court that rendered the judgment the authority to relieve a party from the terms of said judgment. See N.Y. C.P.L.R. § 5015(a). Furthermore, the New York Civil Practice Law and Rules applies only to New York state courts, see id. § 101 ("The civil practice law and rules shall govern the procedure in civil judicial proceedings in all courts of the state [of New York] . . . ."), whereas the Court of Federal Claims is governed by the Rules of the United States Court of Federal Claims, see RCFC 1 ("These rules govern the procedure in the United States Court of Federal Claims in all suits."). And, more to the point, lower federal courts (to include the Court of Federal Claims) do not have jurisdiction to review state court judgements. Burlison v. United States, 75 Fed. Cl. 736, 741 (2007), aff'd, 227 F. App'x 905 (Fed. Cir. 2007); see also Beres v. United States, 92 Fed. Cl. 737, 747 (2010) (discussing the Rooker-Feldman doctrine). Accordingly, this court lacks jurisdiction to relieve plaintiff from a judgment of the New York State Supreme Court.

As discussed more fully above, the court has no jurisdiction over plaintiff's claims. Before dismissing the complaint, however, the court evaluates the appropriateness of a transfer.

B.   Transfer of the Case to Another Court Is Not Appropriate

The court now considers whether "it is in the interest of justice" to transfer plaintiff's complaint to another court of the United States under 28 U.S.C. § 1631. See Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374–75 (Fed. Cir. 2005) (stating that the Court of Federal Claims should consider whether transfer is appropriate once the court has determined that it lacks jurisdiction). Section 1631 states in pertinent part:

> Whenever a civil action is filed in a court as defined in section 610 of this title . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed . . . .

28 U.S.C. § 1631; see 28 U.S.C. § 610 (defining courts as "courts of appeals and district courts of the United States, the United States District Court for the District of the Canal

Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade").

With respect to plaintiff's request for a writ of prohibition, only the New York State Court of Appeals could issue such a writ of prohibition against the New York State Supreme Court, and only the United States Supreme Court could issue a writ of prohibition against the United States Court of Appeals for the Second Circuit. Neither of these courts are ones in which transfer is permitted under 28 U.S.C. § 610. See 28 U.S.C. § 610; see also Sharpe v. United States, 112 Fed. Cl. 468, 478 (2013) ("Although the courts to which transfer is permissible include the United States district courts, they do not include the Supreme Court."); Mendez-Cardenas v. United States, 88 Fed. Cl. 162, 168 (2009) ("This court is unable to transfer any case to the state court system, as no state court falls within the definition in § 610."). Accordingly, the court lacks the authority to transfer plaintiff's writ of prohibition request to another court "in which the action . . . could have been brought." See 28 U.S.C. § 1631.

As to any remaining claims that could conceivably be heard by a court that falls within the definition in 28 U.S.C. § 610—including those against certain judges, the State of New York, and the Supreme Court of New York—the district court has already ruled that such claims are barred on the grounds of judicial immunity and the Eleventh Amendment. See Ajamian, No. 13-cv-1316, 2014 WL 3928448 at *3–5. And, "[t]o the extent that any of [p]laintiff's claims [could] be construed as state-law claims," the district court "decline[d] to exercise supplemental jurisdiction over them." Id. at *7; cf. Compl. at 4, Ajamian, No. 13-cv-1316 (N.D.N.Y Oct. 23, 2013), ECF No. 1 (raising claims against various lawyers and Troy Savings Bank).

Further, with respect to plaintiff's claims that Judge D'Agostino "had a conflict of interest" and that her dismissal of his case without a trial violated his due process right, Compl. 1, 4, the court observes that plaintiff has already raised similar claims before the Second Circuit, see Pl.'s Mot. for Reconsideration at 7–10, Ajamian, No. 14-2934 (Nov. 17, 2014), ECF No. 32 (making allegations purporting to support Judge Mae D'Agostino's alleged conflict of interest); id. at 15 (referencing his "failure of a trial"). Although the Second Circuit did not directly address plaintiff's claims in its denial of plaintiff's motion for reconsideration, see Order, Ajamian, No. 14-2934, (Nov. 25, 2014), ECF No. 38, the court finds that transferring these claims to any other court would not be in the interest of justice.

Based on the foregoing, the court finds that transfer of plaintiff's remaining claims would not be appropriate.

IV.   Conclusion

For the foregoing reasons, the court finds that it lacks jurisdiction over plaintiff's claims, and it is not in the interest of justice to transfer plaintiff's complaint. The Clerk

of Court is directed to **DISMISS** plaintiff's complaint for lack of jurisdiction. See RCFC 12(h)(3). The Clerk of Court will enter judgment for defendant. No costs.

    IT IS SO ORDERED.

PATRICIA E. CAMPBELL-SMITH
Chief Judge